Thompson, Appellee, *v.* Industrial Commission of Ohio, Appellant, et al.

[Cite as Thompson *v.* Indus. Comm. (1982), 1 Ohio St. 3d 244.]

(No. 81-1500—Decided August 18, 1982.)

*Messrs. McNamara & McNamara, Mr. William H. Woods, Mr. J. Paul McNamara, Messrs. Thompson, Meier & Dersom* and *Mr. Thomas D. Thompson,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. Gerald H. Waterman,* for appellant.

*Clayman & Jaffy Co., L.P.A.,* and *Mr. Stewart R. Jaffy,* for AFL-CIO.

*Messrs. Squire, Sanders & Dempsey* and *Mr. William C. Hartman,* for Ohio Chamber of Commerce.

*Messrs. Vorys, Sater, Seymour & Pease* and *Mr. Russell P. Herrold, Jr.,* for Ohio Manufacturers Association.

SWEENEY, J. This appeal presents two issues for our consideration. The first is whether the transfer of SIF investment income to the DWRF, pursuant to R.C. 4123.411, violates Section 35, Article II of the Ohio Constitution.[1] The second is whether the transfer of SIF earnings to the DWRF retroactively increases the compensation paid to disabled workers in violation of Section 28, Article II of the constitution.[2]

I.

The Court of Appeals determined that the DWRF funding scheme contained in R.C. 4123.411 contravened Section 35, Article II. The court reasoned as follows:

---

[1] Article II, Section 35 states in pertinent part:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. * * *"

[2] Section 28, Article II states in pertinent part:

"The general assembly shall have no power to pass retroactive laws, * * *."

"The SIF, created by the General Assembly pursuant to authority granted it by Article II, Section 35, of the Ohio Constitution, is a trust fund which can be used for no other purpose than that provided by Article II, Section 35: providing compensation to workers and their dependents. *Corrugated Container Co.* v. *Dickerson* (1960), 171 Ohio St. 289 [13 O.O. 2d 337]; *Welsh* v. *Indus. Comm.* (1940), 136 Ohio St. 387 [16 O.O. 564]; R.C. 4123.30. The crux of the matter before us, then, is the determination of whether income produced as the result of investing any surplus or reserve belonging to the SIF is itself a part of the SIF. If it is, then, plaintiff's contention is correct: the effect of the transfer provided for by R.C. 4123.411 is to divert a portion of the trust fund to an independent welfare fund, in contravention of Article II, Section 35, of the Ohio Constitution.

"* * *

"* * * Once the income is earned and paid by the treasurer into the SIF, pursuant to R.C. 4123.44(D)(1), the result is inescapable: the income becomes a part of the trust fund, and cannot be applied to any purpose other than that permitted by Article II, Section 35, of the Ohio Constitution. We are not called upon to decide the consequences of diverting the income into the DWRF had it not been required by statute that the income be paid by the treasurer into the SIF. * * *"

Appellant and the *amici,* Ohio AFL-CIO, Ohio Chamber of Commerce, and Ohio Manufacturers Association, challenge the judgment below on a variety of grounds. Their arguments may be summarized as follows:

(1) Transfers of investment income from the SIF to the DWRF are consistent with the purpose of Section 35, Article II;

(2) Such transfers reduce the amount employers are assessed for DWRF;

(3) Investment income derived from the SIF surplus provides funds for administrative and other programs that are not directly related to compensation awards;

(4) R.C. 4123.411, as amended, supersedes the earlier enacted R.C. 4123.44 to the extent that the statutes are inconsistent.

Appellee would rely on *Corrugated Container Co.* v. *Dickerson* (1960), 171 Ohio St. 289 [13 O.O. 2d 337], for the proposition that SIF trust funds cannot be transferred to other accounts. In *Corrugated Container,* however, the contemplated transfer would have moved funds from the SIF to the state's General Revenue Fund. Appellant and the *amici* do not dispute the continuing efficacy of the *Corrugated Container* rule but distinguish *Corrugated Container* from the instant case: "Certainly, the SIF must be used for purposes which relate to, or are incidental to, workers' compensation. This was recognized in *Corrugated Container Corp.;* the SIF cannot be used for payments to nonrelated programs and in that sense it is a 'trust fund,' as is alluded to in the *Corrugated Container Corp.* decision. However, the DWRF is a supplement to the workers' compensation program, hence its location in [R.C.] Chapter 4123. Channeling DWRF through the SIF is entirely consis-

tent with the purpose of the SIF." We agree with appellant and the *amici* that the transfer of SIF investment funds to the DWRF is qualitatively different from the diversion of SIF funds proscribed in *Corrugated Container*. The DWRF is an integral component of Ohio's comprehensive workers' compensation program and, therefore, the use of SIF investment income to fund the DWRF does not contravene the principle enunciated in *Corrugated Container*.

We find the other case cited by appellee to support his contentions, *Welsh* v. *Indus. Comm.* (1940), 136 Ohio St. 387 [16 O.O. 564], inapposite. *Welsh* concerned the claims of an alleged dependent of a deceased worker. The claimant was held not to be a dependent for workers' compensation purposes and therefore ineligible to receive any benefits. There is no question but that a determination of eligibility is the *sine qua non* for participation in workers' compensation. As this court pointed out in *Welsh* at page 395:

"Humanitarian as it would be to generously extend the distribution of the Workmen's Compensation Fund indiscriminately to those in need of support and maintenance, such use and application of that fund would be wholly unauthorized. * * *"

This is not to say, however, as appellee suggests, that the workers' compensation statutes are devoid of humanitarianism. Rather, the humanitarian impulse, which underlies the entire workers' compensation system, is focused with particularity on a designated group. The recipients of the DWRF subsidy, namely those permanently and totally disabled employees who have previously been awarded workers' compensation, are clearly members of this designated group. Thus the *Welsh* case poses no bar to the DWRF program because R.C. 4123.411 does not authorize an indiscriminate distribution of SIF funds.

Appellant's second argument, that the transfers reduce the amount employers would otherwise be assessed for DWRF is self-explanatory. Nevertheless, appellee contends that the controverted transfers have "illegally increased the amount of premiums that employers must contribute to the SIF." He believes he would be entitled to a reduction in his workers' compensation premium if the SIF investment income were not diverted to the DWRF. Under settled insurance ratemaking principles, however, an insured has no claim on income earned from his premium payments. See *In re National Bureau of Casualty Underwriters and National Automobile Underwriters Asssociation* (Ohio Department of Insurance 1967) and 19 Appleman, Insurance Law and Practice, Section 10505. Appellee is not entitled to an automatic premium reduction by reason of the SIF having made money on his money. Moreover, even if appellee's premiums were reduced as a consequence of the instant cause, this reduction would necessarily be offset by higher DWRF assessments, which assessments have not been challenged as being in any way constitutionally infirm. Thus appellee has not been prejudiced insofar

as the transfer of SIF income to the DWRF has resulted in lower DWRF assessments than he would otherwise have been required to pay.[3]

Appellant and the *amici* further contend that SIF moneys are already used to fund a number of ancillary workers' compensation programs and the administrative expenses related thereto, thereby further undercutting appellee's position and the ruling of the Court of Appeals. As appellant states, "the Court of Appeals has rigidly construed the Constitution to mean that every dollar of the State Insurance Fund must be used as a direct disability compensation payment to claimants, and for no other purpose." The court's narrow interpretation of Section 35, Article II simply disregards settled practices in related workers' compensation contexts.[4] We reject the lower court's cramped reading of Section 35, Article II. As we stated in *State, ex rel. Michaels,* v. *Morse* (1956), 165 Ohio St. 599, 603 [60 O.O. 531], Section 35, Article II " '* * * is a broad grant of power to establish and to administer the fund without limitation, * * *.

" ' "* * *'

" 'Although certain provisions of "II-35" are to be regarded as self-executing, such as the provision with respect to violation of a specific requirement, it is apparent that the powers granted in the first and third sentences are to be implemented by act of the General Assembly. Such powers are permissive *(State, ex rel. Lourin,* v. *Industrial Commission,* 138 Ohio St., 618, 622 [21 O.O. 490], 37 N.E. [2d], 595), not mandatory, and, on their face, are not self-executing. * * *' "

The constitutional provision specifically grants the General Assembly the power to determine "the terms and conditions upon which payment shall be

---

[3] Appellee contends that the solvency of the SIF has been endangered by the transfers of SIF investment income to the DWRF. At oral argument counsel suggested that the SIF might be in trouble ten or twenty years from now and compared the practices controverted herein with the policies that have taken the Social Security system to the brink of financial collapse. Despite appellee's dark forecasts, the record indicates that the SIF is solvent, and that employer premiums have recently been reduced. See 1978 and 1979 Annual Reports of the Industrial Commission and the Bureau of Workers' Compensation.

Appellee further charges that the General Assembly's "diversion of trust funds from the SIF is * * * shortsighted and irresponsible." Assuming, *arguendo,* that appellee is correct in his characterization, shortsighted and irresponsible legislation, like all other legislation, is presumed to be constitutional. One who would challenge the constitutionality of a validly enacted statute bears a heavy burden of proof, *State, ex rel. Jackman,* v. *Court* (1967), 9 Ohio St. 2d 159 [38 O.O. 2d 404], which is not borne merely by labelling the statute in question "shortsighted and irresponsible."

[4] See, *e.g.,* R.C. 4123.34(B) (creation of surplus fund); R.C. 4123.47(A) (set aside for biennial actuarial audits); R.C. 4123.515 (reimbursement of self-insured employers upon denial of a claim paid under a regional board order); R.C. 4123.519 (reimbursement of payments made pursuant to administrative order that are subsequently overturned by court; cost of depositions and copies thereof); R.C. 4123.68(V), (W) and (Y) (payments to medical specialists in certain occupational disease cases); R.C. 4123.57(D) (charge for prosthesis); R.C. 4123.343 (charge against surplus fund if handicapped employee is injured); R.C. 4123.75 (payment of claims arising against non-complying employers).

made." The ruling of the Court of Appeals impairs the General Assembly's ability to pass appropriate workers' compensation legislation in the future and casts doubt on heretofore unquestioned workers' compensation practices. The General Assembly is afforded substantial discretion to implement a comprehensive workers' compensation program and it is not the function of the judiciary to question the wisdom of the General Assembly's exercise of its permissive powers under Section 35, Article II, so long as these powers are used in furtherance of the constitutionally enumerated purpose. The DWRF subsidy received by eligible permanently and totally disabled workers infuses Section 35, Article II with a meaningfulness that is fully consistent with the goals that prompted the people of Ohio to approve Section 35, Article II in the first place. Indeed, to hold otherwise and declare the DWRF program as presently funded and administered unconstitutional makes a cruel mockery of the laudable purpose that the constitutional provision was designed to serve.

In their final argument, appellant and the *amici* contend that the 1975 amendment of R.C. 4123.411 superseded any inconsistent provisions in R.C. 4123.44, a pre-1975 enactment, upon which the court below relied. R.C. 4123.44 concerns the investment of surplus or reserve of the SIF. The Court of Appeals looked specifically to the procedural scheme set forth in R.C. 4123.44(D)(1) to support its decision. R.C. 4123.44(D)(1) provides that SIF investments "* * * shall be placed in the hands of the treasurer of state, who is hereby designated as custodian thereof * * *. The treasurer of state shall collect the interest thereon as the same becomes due * * * and pay the same, when collected, into the state insurance fund.* * *"

According to the court, "[o]nce the income is earned and paid by the treasurer into the SIF, pursuant to R.C. 4123.44(D)(1), * * * the income becomes part of the trust fund and cannot be applied to any other purpose other than that permitted by Art. II, Section 35 * * *."[5] For reasons previously discussed, however, the DWRF constitutes a purpose permitted by Section 35, Article II. Moreover, to the extent that any inconsistency exists between R.C. 4123.411, which expressly refers to 4123.44, and R.C. 4123.44(D)(1), then the more recent statute (R.C. 4123.411) must be read as modifying the accounting practice outlined in R.C. 4123.44. See R.C. 1.52(A) (latest statute prevails if conflict exists).

The court below buttressed its reading of the relevant statutes by invoking common law trust fund principles. The court cited *Eshelby* v. *Cincinnati Bd. of Edn.* (1902), 66 Ohio St. 71, for the proposition that interest follows principal. In *Eshelby,* however, this court qualified the aforestated rule by stating at page 74, "that in the absence of a statute or stipulation to the contrary the increment follows the principal." In the case at bar we are clearly confronted with "a statute * * * to the contrary" insofar as R.C. 4123.411

---

[5] The court left open the question of whether the DWRF funding plan would be constitutional if the earned income did not have to be routed through the treasurer and the SIF before being diverted to the DWRF. The distinction, if any, is inconsequential.

authorizes the severance of interest from SIF principal. The Court of Appeals' reliance on common law trust fund principles, therefore, was misplaced because the court failed to take into account the General Assembly's prerogative to abrogate the common law.

## II.

Appellee has framed his arguments in either-or terms: Either the DWRF provides something other than workers' compensation, in violation of Section 35, Article II (which argument we have already disposed of), or the DWRF does provide "compensation," in violation of Section 28, Article II, as that section has been construed in prior workers' compensation cases. Both the trial court and the Court of Appeals rejected appellee's contentions that DWRF payments violate Section 28, Article II, by retroactively increasing disability awards. The courts below found that "the DWRF is * * * independent of the SIF" and therefore presented no retroactivity problem.

Appellee argues that while the DWRF and SIF were separate funding entities from 1953-1975, "[t]he transfer of assets from the State Insurance Fund to the Disabled Workers Relief Fund pursuant to § 4123.411, R.C., destroys the separation of the State Insurance Fund and the Disabled Workers Relief Fund and retroactively increases the rate of compensation paid to injured workers from the State Insurance Fund in violation of Article II, § 28, of the Constitution of Ohio." Appellee would find support for his position in *Indus. Comm.* v. *Kamrath* (1928), 118 Ohio St. 1, and *State, ex rel. Schmersal,* v. *Indus. Comm.* (1944), 142 Ohio St. 477 [27 O.O. 404]. In *Kamrath,* which denied the claims of a dependent whose decedent "did not fall within the class of whom the Legislature had then created a right in his dependent," *Id.,* at page 8, this court stated that "[t]he statutory law in force upon the date the cause of action accrues is the measure of the right, and is not subject to enlargement or diminishment by the Industrial Commission or the courts at any time, nor by the Legislature itself subsequent to the accrual of the right." *Id.,* at page 4. (The *per curiam* opinion in *Schmersal* merely reiterated the *Kamrath* rule, quoting the *Kamrath* syllabus verbatim.)

The General Assembly was well aware of *Kamrath* and the need to sidestep Section 28, Article II when it created the DWRF program. It may be fairly said that from its inception the DWRF has been a legislative response to Section 28, Article II. As one authority has written, "[t]he need for the [DWRF] program arose out of the principle that the benefits payable in a compensation claim are those in effect at the time of the injury.

"* * *

"A large number of the permanently and totally disabled claimants received the lower levels of compensation benefits and were the continued victims of the inroads of inflation. It was believed generally that any plan of retrospective increase in the level of compensation payments would contravene § 35 [*sic* Section 28] of Article II of the Constitution. The disabled workmen's relief program was created to provide a subsidy that would give

relief to the permanently and totally disabled claimants without running counter to the constitutional provision." Young, Workmen's Compensation Law of Ohio, Section 20.1. See, also, 1977 Workmen's Compensation Advisory Council, Statement Concerning Our Recommendation As To Review And Legislation Relating To Disabled Workers' Relief Fund.[6]

Despite this conscious and deliberate effort to distinguish DWRF payments from disability compensation, appellee insists that the DWRF funding scheme authorized under R.C. 4123.411 as amended in 1975 destroys the separation between the two programs. As a constitutional matter, however, if the DWRF has the effect of retroactively increasing workers' compensation awards, then the funding source of such a retroactive increase is irrelevant. Retroactively granted benefits would fall afoul of Section 28, Article II, irrespective of where the dollars came from to fund these benefits. Thus the change in the DWRF funding mechanism authorized in 1975 pursuant to R.C. 4123.411 did not change the nature of the DWRF program as appellee argues. On the contrary, appellant is correct in asserting that if appellee's retroactivity arguments have merit, "then the entire DWRF program is in jeopardy," notwithstanding the fact that the framers of the DWRF statutes were keenly aware of the potential retroactivity problem and established the DWRF as a separate relief fund so as to avoid any collision with Section 28, Article II.

We thus reject appellee's contention that the transfer of SIF investment income to the DWRF somehow destroys the separation between disability awards and DWRF payments. We are satisfied upon our review of the history of the DWRF that the DWRF program as currently funded and administered does not serve to increase workers' compensation awards retroactively in contravention of Section 28, Article II.

For the reasons hereinbefore stated, we hold that the transfer of SIF in-

---

[6] The 1977 Advisory Council Statement includes the following capsulized history of the DWRF:

"In the late 1940's and very early 1950's discussions concerning workers' compensation benefits to disabled workers in legislative committees, began pointing out that old permanent total disability claimants were getting only $12.00 - $15.00 - $18.75 a week in maximum benefits.

"Suggestions were made as to how additional benefits may be paid to such individuals, but all discussions came to the dead end that retroactive increases in weekly benefits would be unconstitutional.

"* * *

"During the administration of Governor Frank J. Lausche a scheme was advanced under which supplemental payments would be made to permanent total disability claimants from a separate and different fund. It is important that it be remembered that in the early 1950's this was tacitly agreed to by industry and labor, with the support of the Governor as constituting a Welfare payment and not a workers' compensation benefit."

See, also, Workmen's Compensation Subcommittee Report, Memorandum re Constitutionality of Proposal to Apply Increase in Maximum Compensation Rates to Persons Entitled to Workmen's Compensation as of Effective Date of the Amendment, 23 Ohio Bar (No. 21) 456 (1950).

vestment income to the DWRF pursuant to R.C. 4123.411 violates neither Section 35, Article II nor Section 28, Article II of the Ohio Constitution. Accordingly, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C.J., W. BROWN, LOCHER and C. BROWN, JJ., concur.

HOLMES, J., concurs in the syllabus and judgment.

KRUPANSKY, J., dissents.

KRUPANSKY, J., dissenting. The transfer of funds from the State Insurance Fund (SIF) to the Disabled Workers' Relief Fund (DWRF) pursuant to R.C. 4123.411 is unconstitutional since it violates Section 28, Article II, and/or Section 35, Article II, of the Ohio Constitution; therefore, I must respectfully dissent.

Section 28, Article II, of the Ohio Constitution states in part: "The general assembly shall have no power to pass retroactive laws, * * *." The basic tenets of workers' compensation law, which has existed since the system's inception are as follows:

" '1. The rights of injured employees and the dependents of killed employees to participate in the state insurance fund are such, and such only, as are conferred by statutory law.

" '2. *The provisions of the General Code relating to compensation of injured employees or the dependents of killed employees in force at the time the cause of action accrues are the measure of the right of such employees and dependents to participate in the state insurance fund.* [Emphasis added.]

" '3. The cause of action of an injured employee accrues at the time he receives an injury in the course of his employment.' " *State, ex rel. Schmersal,* v. *Indus. Comm.* (1944), 142 Ohio St. 477, 478 [27 O.O. 404], quoting from the syllabus in *Indus. Comm.* v. *Kamrath* (1928), 118 Ohio St. 1.

In 1953 the General Assembly enacted R.C. 4123.412, which created the DWRF because it recognized the inadequacy of payments being received by individuals and dependents of individuals declared permanently and totally disabled. The DWRF was to provide supplemental *relief* benefits — *not compensation* — to disabled workers and was to be a separate and distinct fund from the SIF.

For example, the workers' compensation payments would not be increased because to increase compensation would be violative of Section 28, Article II of the Ohio Constitution prohibiting passage of retroactive laws. Rather the worker was paid a relief benefit to supplement his compensation payments. With this arrangement there was no violence perpetrated upon Section 28, Article II of the Ohio Constitution dealing with retroactivity.

In 1975, however, R.C. 4123.411 was amended to provide:

"In the event the amount produced by the assessment [for the DWRF] is not sufficient to carry out such sections the additional amount necessary shall be provided from the income produced as a result of investments made pursuant to section 4123.44 of the Revised Code."

In effect, therefore, R.C. 4123.411 allowed the investment income from the SIF to be channeled into the DWRF. These interest payments being funneled into the DWRF from the SIF are clearly a part of the SIF. Several Ohio statutes unambiguously exhibit interest earned on the assets of the SIF being funneled into the DWRF is part of the trust fund's belonging to the SIF. For example, R.C. 4123.30 provides in part:

"* * * the net premiums contributed thereto [the SIF] by employers *after adjustments and dividends* * * * constitute a trust fund for the benefit of employers and employees mentioned in sections 4123.01, 4123.03, and 4123.73 of the Revised Code for the payment of *compensation*, medical services, examinations, recommendations and determinations, nursing and hospital services, medicine, rehabilitation, death benefits, funeral expenses, and like benefits for loss sustained on account of injury, disease or death provided for by sections 4123.01 to 4123.94, inclusive, of the Revised Code, *and for no other purpose.*" (Emphasis added.)

And, R.C. 4123.44(D)(1) states:

"* * * The treasurer of state shall collect the interest thereon [investment of surplus or reserve belonging to the state insurance fund] as the same becomes due, and also the principal thereof, *and pay the same, when collected, into the state insurance fund.*" (Emphasis added.) Therefore, the mere fact that these funds have taken a circuitous route, *i.e.,* from the SIF through the DWRF and *then* to the worker or the worker's dependents, does not alter the conclusions that the payment is from the SIF and must be compensation.

The SIF requires payment to be for "the purpose of providing *compensation* to workmen and their dependents, * * *." (Emphasis added.) Section 35, Article II of the Ohio Constitution. If this payment is compensation, it is clearly in violation of the prohibition found in Section 28, Article II of the Ohio Constitution against retroactive laws. If this payment is not compensation and is a relief benefit then it cannot be paid from the SIF.

Even if one accepts the proposition that these payments are not in the form of compensation, but are actually in the form of relief, the portion of R.C. 4123.411 at issue still violates Section 35, Article II of the Ohio Constitution since trust funds from the SIF are being appropriated for purposes other than the purposes authorized in that article.

As stated, the SIF is a trust fund expressly limited by Article II, Section 35 of the Ohio Constitution, to providing *compensation* to workmen and their dependents. Therefore, clearly, the fund may not be used to make relief payments. As stated by this court in *Welsh* v. *Indus. Comm.* (1940), 136 Ohio St. 387, at 395-396 [16 O.O. 564]:

"Humanitarian as it would be to generously extend the distribution of the Workmen's Compensation Fund indiscriminately to those in need of support

and maintenance, such use and application of that fund would be wholly unauthorized. It has been suggested that insofar as support and maintenance for those in need is provided by payment out of this fund, there is a decreased demand upon public charity generally. That, of course, is true; but the Workmen's Compensation Fund is not a charitable fund. It is created by assessments upon employers to make good, at least in a measure, the injuries caused to and damages suffered by workmen and the loss sustained by those dependent upon them where injury results in death and deprives dependents of their support. Whatever is due the workmen or those deprived of his support is theirs *not as a matter of charity but as a matter of right; for it comes from a fund created for that very purpose and should be diverted to no other use or purpose.*" (Emphasis added.)

As well as violating constitutional mandates, I also feel R.C. 4123.411 violates the sound dictates of public policy. While the majority opinion effectively reduces the amount employers must expend now to satisfy the DWRF, the long term ramifications of the opinion have been totally ignored. R.C. 4123.29 requires the Industrial Commission to establish premium rates of employers for contribution to the SIF "at a level that assures the solvency of the fund." Analyzing this situation it becomes clear the effects of the majority's holding is two-fold: (1) employers are required to contribute less to the DWRF since the earned income from the SIF is being used to support the DWRF; and (2) the SIF is being rapidly depleted through this siphoning of funds which will *ultimately increase* the premiums required of employers for the SIF. As an example, between 1976 and 1981, $78,600,000 was transferred from the SIF to the DWRF. Therefore, the majority's stance will not produce any long-term, overall reduction in the amount employers must expend for workers' compensation coverage.

The majority in its opinion has orchestrated a variation on a theme much like the song of the Lorelei, although pleasant to hear but if followed will surely lead to ultimate disaster. It has proposed a blueprint for destruction by perpetuating a plan that puts in jeopardy the future solvency of the SIF. The majority's scheme is designed to rape the SIF in order to placate the present situation at the expense of future generations of injured workers. The treatment proposed by the majority is much like offering a placebo to cure cancer. The futility of such treatment is self-evident, resulting in the ultimate demise of the patient. The only prescription to cure this present condition is bold legislative enactment to preserve the integrity of both funds, not incipient stop-gap measures contrived to rob Peter to pay Paul.

It also appears the majority is attempting to step into the shoes of the General Assembly rather than fulfilling its function as a judicial body. This court aptly stated in *Indus. Comm.* v. *Kamrath, supra,* at 9, as follows:

"The Workmen's Compensation Law is still in the development stage. Each successive legislative enactment is intended to make its enforcement more practical and its operation more just, but rights of injured employees and of the dependents of killed employees to participate in such fund do not

accrue in advance of legislation creating such rights, and the Legislature is as powerless to create or take away rights in retrospect, under the Workmen's Compensation Law, as it is to create or take away any other legal right in retrospect. *The courts by interpretation cannot do with enacted legislation that which the Legislature cannot do by enactment.*" (Emphasis added.)

The duty of the court is not to legislate but to have the courage to interpret the law as written in spite of advocates to the contrary.

For all the foregoing reasons, I respectfully dissent and would affirm the Court of Appeals.