[Cite as *State ex rel. Lutheran Hosp. v. Buehrer*, 2015-Ohio-380.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Lutheran Hospital, | : | |
| Relator, | : | |
| v. | : | No. 13AP-670 |
| Stephen P. Buehrer Administrator Ohio Bureau of Workers' Compensation, Ohio Bureau of Workers' Compensation, and Elmira Brown, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on February 3, 2015

*Nicola, Gudbranson & Cooper, LLC, Michael J. Bertsch, Kathleen E. Gee* and *Amy Berman Hamilton*, for relator.

*Michael DeWine*, Attorney General, and *Stephen D. Plymale*, for respondent Ohio Bureau of Workers' Compensation.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Lutheran Hospital ("relator"), filed this original action requesting a writ of mandamus ordering respondent Stephen P. Buehrer, Administrator of the Ohio Bureau of Workers' Compensation ("administrator"), to vacate the order of his administrator's designee denying relator's request for reimbursement of payments it made to the Ohio Bureau of Workers' Compensation ("bureau") on semi-annual bills for benefits paid to Elmira Brown ("Brown") from the disabled workers' relief fund ("DWRF"), and to enter an order granting reimbursement of those payments.

{¶ 2} Pursuant to Civ.R. 53(D) and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends that this court deny the request for a writ of mandamus.

{¶ 3} Relator sets forth one objection to the magistrate's decision:

> Relator objects to the Magistrate's Decision because it failed to address the issue of whether Respondent violated its clear legal duty under R.C. 4123.411 *et seq.* by issuing DWRF payments to Brown to which she was not entitled and by billing Lutheran Hospital for the DWRF payments made without legal authority.

{¶ 4} As explained in the magistrate's decision, Brown was an employee of relator and received an injury in the course of and arising out of her employment. An industrial claim was allowed for that injury. Brown later filed an application for permanent total disability ("PTD") compensation. She was initially awarded PTD compensation under an order issued on February 15, 1990. On March 23, 1990, the bureau notified Brown that she was eligible for DWRF payments and would receive benefits. Following a rehearing pursuant to relator's request, Brown's application for PTD compensation was denied in an order issued on May 8, 1992. It appears that Brown was not eligible for DWRF benefits because she was not receiving PTD compensation, but that she received DWRF benefits until August 2009, at which time the bureau notified her that the benefit payments were being terminated. During the period when Brown was receiving DWRF benefits, the bureau billed relator semi-annually for the amount of those benefits, pursuant to R.C. 4123.411(C).

{¶ 5} The magistrate concluded that both the bureau and relator operated under a mutual mistake of fact during the period in which the bureau made DWRF payments to Brown and relator paid the bills submitted by the bureau under R.C. 4123.411(C). Relator asserts that the magistrate erred by failing to determine whether the bureau violated a clear legal duty by issuing DWRF payments to Brown and by billing relator for those payments.

{¶ 6} "To be entitled to a writ of mandamus, a relator must carry the burden of establishing that he or she has a clear legal right to the relief sought, that the respondent

has a clear legal duty to perform the requested act, and that the relator has no plain and adequate remedy in the ordinary course of law." *State ex rel. Van Gundy v. Indus. Comm.*, 111 Ohio St.3d 395, 2006-Ohio-5854, ¶ 13. This standard places a heavy burden on a relator to submit facts and produce proof that is plain, clear, and convincing. *State ex rel. Casto v. Indus. Comm.*, 10th Dist. No. 12AP-205, 2013-Ohio-1017, ¶ 9, citing *State ex rel. Stevens v. Indus. Comm.*, 10th Dist. No. 10AP-1147, 2012-Ohio-4408, ¶ 7. *See also State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, ¶ 56 ("Parties seeking extraordinary relief bear a more substantial burden in establishing their entitlement to this relief. In mandamus cases, this heightened standard of proof is reflected by two of the required elements—a 'clear' legal right to the requested extraordinary relief and a corresponding 'clear' legal duty on the part of the respondents to provide it."). "The right to mandamus must be shown by clear and convincing evidence, and a writ will not be granted in doubtful cases." *State ex rel. NHVS Internatl., Inc. v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 13AP-356, 2014-Ohio-5522, ¶ 6.

{¶ 7} In its memorandum in support of its objection and in its brief before the magistrate, relator argues that the bureau violated a clear legal duty by making DWRF payments to Brown when she was not eligible for such payments and by billing relator for the cost of those payments. The standard for mandamus relief, however, focuses on whether the respondent has a clear legal duty to perform the requested act. In this case, the act that relator seeks to compel through mandamus is reimbursement of the amounts it paid to the bureau pursuant to the bills for DWRF payments made to Brown. Assuming for purposes of analysis that the bureau violated a clear legal duty by making DWRF payments to Brown and billing relator for those payments, relator has failed to present clear and convincing evidence that it has a right to reimbursement or that the bureau has a duty to pay reimbursement. *See, e.g., State ex rel. Liberty Mut. Ins. Co. v. Indus. Comm.*, 10th Dist. No. 83AP-430 (May 3, 1984) ("[R]elator gives no statutory basis upon which it could be found that respondent is under a legal duty to reimburse an out-of-state insurer for payments made to an Ohio employee for injuries sustained in another state where a claim for benefits is later granted by the Ohio Industrial Commission.").

{¶ 8} Accordingly, relator's objection to the magistrate lacks merit and is overruled.

{¶ 9}  Upon review of the magistrate's decision, an independent review of the record, and due consideration of relator's objection, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule relator's objection to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. The requested writ of mandamus is hereby denied.

*Objection overruled; writ denied.*

TYACK and KLATT, JJ., concur.

_____

# APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Lutheran Hospital, | : | |
| Relator, | : | |
| v. | : | No.  13AP-670 |
| Stephen P. Buehrer Administrator Ohio Bureau of Workers' Compensation, | : | (REGULAR CALENDAR) |
| Ohio Bureau of Workers' Compensation, and Elmira Brown, | : | |
| | : | |
| Respondents. | : | |
| | : | |

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on October 17, 2014

*Nicola, Gudbranson & Cooper, LLC, Michael J. Bertsch, Kathleen E. Gee* and *Amy Berman Hamilton*, for relator.

*Michael DeWine*, Attorney General, and *Stephen D. Plymale,* for respondent Ohio Bureau of Workers' Compensation.

### IN MANDAMUS

{¶ 10} In this original action, relator, Lutheran Hospital, requests a writ of mandamus ordering respondent Stephen P. Buehrer, Administrator of the Ohio Bureau of Workers' Compensation ("administrator"), to vacate the order of his administrator's designee that denied relator's request for reimbursement of payments it made to the Ohio Bureau of Workers' Compensation ("bureau") on semi-annual bills for benefits paid to

Elmira Brown from the disabled workers' relief fund ("DWRF"), and to enter an order granting the requested reimbursement.

<u>Findings of Fact</u>:

{¶ 11} 1. On April 4, 1982, Elmira Brown ("claimant" or "Brown") received an injury in the course of and arising out of her employment with Lutheran Hospital, a self-insured employer under Ohio's workers' compensation laws.

{¶ 12} 2. The industrial claim (No. 784765-22) was allowed.

{¶ 13} 3. On November 29, 1988, Brown filed an application for permanent total disability ("PTD") compensation.

{¶ 14} 4. Following a February 6, 1990 hearing before the then five-member Industrial Commission of Ohio ("commission") an order was issued February 15, 1990 that awarded PTD compensation beginning February 2, 1988.

{¶ 15} 5. By letter dated March 23, 1990, the bureau's DWRF section informed Brown that she was eligible for DWRF payments and would be receiving benefits.

{¶ 16} 6. Earlier, on March 7, 1990, pursuant to R.C. 4123.522, relator moved the commission for rehearing of the PTD application on grounds that relator did not receive notice of the hearing.

{¶ 17} 7. Following a December 4, 1990 hearing, the commission mailed an order on August 15, 1991 that granted relator R.C. 4123.522 relief.  The commission's order instructed:

> Claim file is to be referred to ADDOK to reset for hearing on the Claimant's IC-2 filed November 29, 1988.
>
> Permanent Total Disability benefits are to be continued to be paid to date of Commission hearing.

{¶ 18} 8. Following a February 12, 1992 hearing, the then five-member commission mailed an order on May 8, 1992 that denies that PTD application.

{¶ 19} The commission's May 8, 1992 order can be divided into three sections.  The middle section is captioned "Findings of Fact and Order of the Commission."  Above the middle section, certain information is listed such as Brown's name and address, the employer's name and address, and the name and address of Brown's counsel.

{¶ 20} Among the information listed (above the middle section) is the following:

BWC/LAW DIRECTOR
ACTUARIAL
DWRF

{¶ 21} Below the middle section are the signature blocks for the five commissioners.

{¶ 22} 9.  By letter dated March 24, 2009, the bureau's Chief of Customer Services served on Lutheran Hospital a list of injured workers who, according to bureau records, were receiving PTD benefits from Lutheran Hospital.  The letter requested that Lutheran Hospital review the list and report back to the bureau whether any of the injured workers were no longer receiving PTD benefits or whether other injured workers should be added to the list.

{¶ 23} 10. Accompanying the March 24, 2009 letter was a bureau form or questionnaire captioned:  "BWC review of permanent total disability (PTD) payments by self-insuring employers."  The form asks specific information regarding Brown.

{¶ 24} 11. Counsel for relator, Kathleen E. Gee, completed the form regarding Brown, and, on April 22, 2009, wrote a letter to Kristie Danley of the bureau's Dayton Customer Service Office.

{¶ 25} 12.  Gee's April 22, 2009 letter to Danley states:

In response to the enclosed questionnaire, please note that, according to our file, the Industrial Commission of Ohio, without notice to or appearance by the self-insured employer, awarded permanent total compensation to claimant on February 15, 1990. The employer sought R.C. §4123.522 relief and was advised by the BWC Self-Insured Department not to pay on the February 15, 1990 ICO Order until its R.C. §4123.522 Motion had been adjudicated. That Motion was granted on December 4, 1990 and a rehearing was ordered. Following rehearing, the ICO's February 12, 1992 Order denied claimant's Application for Permanent Total Disability. Therefore, we do not believe any permanent total disability compensation has been paid in this case.

{¶ 26} 13. By letter dated August 12, 2009, the bureau informed Brown that she had been receiving DWRF benefits in error and that DWRF payments were being terminated.

{¶ 27} 14. On May 20, 2010, Gee wrote to Jim Fograscher, the director of the bureau's self-insured department:

> BWC began paying DWRF sometime in 1990 per BWC claim notes. Notwithstanding the February 12, 1992 ICO Order, those payments continued until August 20, 2009. As evidenced by the enclosed BWC payment listing, as of August 6, 2009, erroneous DWRF payments to claimant from January 1, 1993 through that date totaled $93,256.15. DWRF benefits paid between 1990 and December 31, 2002 add a currently unknown figure to the overpayment. It also appears an additional payment of $352.71 was made to claimant on August 20, 2009 bringing the known overpayment to $93,608.87. BWC directed Lutheran to reimburse it for each of the payments made. Due to some inadvertent clerical error, Lutheran complied. That error was perpetuated with the receipt of subsequent BWC invoices.
>
> In a conversation with Kristie Danley in the BWC Dayton Service Office on April 22, 2009, we were assured BWC would reimburse Lutheran for any wrongfully collected DWRF monies. As of July 1, 2009, we were told that the only issues delaying reimbursement were to determine what due process was owed to claimant before stopping DWRF payments and how BWC was to go about accomplishing a reimbursement to Lutheran. Although this office and Lutheran have made additional inquiries, and although BWC stopped further DWRF payments to claimant, Lutheran has yet to receive reimbursement.
>
> Lutheran Hospital hereby formally requests reimbursement of overpaid DWRF funds in the amount of $93,608.87 plus the amount of any DWRF benefits paid to claimant between February 15, 1990 and December 31, 2002.

{¶ 28} 15. On April 12, 2011, Gee wrote to Paul Flowers, the interim director of the bureau's self-insured department:

> Enclosed is our May 20, 2010 correspondence to Jim Fograscher. Attempts to follow up with Mr. Fograscher by telephone failed and we received no response to the letter, either verbally or in writing. Lutheran Hospital maintains it is entitled to reimbursement of all DWRF funds paid by BWC to claimant following her PTD application. That application was ultimately denied, but BWC continued to pay benefits. The amount owed to Lutheran arising from BWC's error is

$93,608.87 plus any amount of DWRF benefits paid to claimant between February 15, 1990 and December 31, 1992.

We would appreciate an immediate written decision responsive to this request and reimbursement of the erroneously paid DWRF benefits as soon as practicable.

16.  On May 12, 2011, Paul Flowers wrote to Gee:

After researching this issue, the BWC Self-Insured Department has determined that the above requests for reimbursement cannot be granted. Per Ohio Revised Code 4123.411(C) and Ohio Administrative Code 4123-17-29(B), the BWC paid DWRF benefits to the Injured Worker and then appropriately billed the self-insured employer for these amounts. Lutheran Hospital subsequently reimbursed the BWC for these payments without protest. Based on the employer's reimbursement of these payments, the DWRF fund is whole from a BWC perspective. Any remedy that the employer seeks related to a reimbursement of these costs would need to be pursued through the Industrial Commission.

If you do not agree with this decision you have appeal rights.

{¶ 29} 17.  On May 31, 2011, Gee wrote to the bureau's self-insured department:

Lutheran Hospital respectfully disagrees with the Self-Insured Department's decision in this matter. The error in payment of DWRF benefits to claimant whose PTD application was denied was made by BWC. The responsibility for that error should not be abdicated for the mere reason that it passed on the cost of that error to the employer. Therefore, please consider this Lutheran Hospital's appeal of the May 12, 2011 letter denying its request for reimbursement.

{¶ 30} 18. Following a July 20, 2011 conference or hearing, the bureau's three-member Self-Insured Review Panel ("SIRP") mailed a three-page written decision on August 31, 2011, stating:

The issue presented concerned the employer's appeal of assessments charged to its self-insured risk. Specifically, the employer has been charged for Disabled Workers' Relief Fund (DWRF) benefits paid in the claim of Elmira Brown, 784765-22. The employer paid these assessed amounts to

BWC and is now requesting reimbursement, alleging the assessments were erroneously billed.

At the conference, the employer's representatives advised the Panel of the following events. The employer, Lutheran Hospital (Lutheran), became a self-insuring employer for purposes of Ohio workers' compensation coverage on January 1, 1973, and continues to be an active self-insuring employer in Ohio under SI# 20003081. It has been under the umbrella of the Cleveland Clinic since 1997.

The employer's representatives stated that claimant Elmira Brown (Brown) was injured in 1982. Brown's claim was allowed as a self-insured claim, charged to the employer's risk number, and given claim no. 784765-22. Brown was granted permanent total disability (PTD) benefits by the Industrial Commission by order dated February 15, 1990, with an effective start date of February 22, 1988. Lutheran was ordered to pay these benefits to Brown. However, Lutheran alleged it did not receive notice of the PTD hearing, and on August 15, 1991, filed a motion for rehearing under Ohio Revised Code §4123.522, which was granted. A second order was issued following a hearing on December 4, 1990. This order required Lutheran to continue paying PTD benefits until a hearing could be scheduled before the full Commission. Upon rehearing, the Industrial Commission overturned its original order and denied Brown's PTD application * * *.

It is undisputed that Lutheran paid no PTD benefits to Brown at any time, including the period from 1988-1992 when it was ordered to do so by the Industrial Commission. BWC began paying DWRF benefits after the initial PTD award, and continued to pay DWRF benefits until August 20, 2009. The employer's representatives do not dispute that Lutheran received semi-annual invoices for the DWRF payments, and continued to reimburse BWC throughout this 17-year period for DWRF benefits paid on this self-insured claim. The error was discovered by BWC in 2009 through an internal audit of self-insuring employers, when BWC contacted Lutheran by letter to verify [the] amount of the PTD payments.

The employer initially requested reimbursement in the amount of $93,608.87, plus additional unknown costs for DWRF payments between February 15, 1990, and

December 31, 1992. Lutheran has now revised the requested reimbursement figure to $99,187.31. The employer's representatives stated that because BWC has the expertise and controls the calculation and billing of DWRF assessments, BWC, rather than the employer, should bear the burden of absorbing the loss for the benefits erroneously paid to Brown.

A representative of the Self-Insured Department noted that the DWRF invoices sent to the employer specifically indicate the billing is for amounts paid on a particular self-insured claim, listing both the claim number and the injured worker's name. It is the Self-Insured Department's position that because the employer reimbursed BWC without protest, the DWRF Fund has been made whole.

Ohio Revised Code §4123.411(C) provides as follows with respect to DWRF benefits:

For a self-insuring employer, the bureau of workers' compensation shall pay to employers who are participants regardless of the date of injury, any amounts due the participants under section 4123.414 [4123.41.4] of the Revised Code and shall bill the self-insuring employer, semiannually, for all amounts paid to a participant.

The statute is supplemented by Ohio Administrative Code Rule 4123-17-29(B)(1), which provides the following:

Each self-insuring employer **shall reimburse the bureau for DWRF payments made in claims in which it is the employer of record,** without regard to the date the employer was granted the privilege to pay compensation directly, for all DWRF payments made on or after August 22, 1986. (Emphasis added.)

The Disabled Workers' Relief Fund was established in 1953 to provide supplemental benefits to workers who have been granted PTD awards. It is separate from the State Insurance Fund. Prior to 1986, DWRF benefits were funded by employer payroll assessments charged to both state fund and self-insuring employers. In 1986, the General Assembly changed the DWRF funding mechanism for self-insuring employers, and BWC began billing each self-insuring employer of record for the full amount of DWRF payments made after August 22, 1986, without regard to the date of

injury, in accordance with the provisions referenced above. The change in the funding mechanism was upheld by the Ohio Supreme Court in the case of Wean Inc. v. Industrial Commission of Ohio (1990), 52 Ohio St.3d 266. In that case, the Court stated that "self-insured employers are currently responsible to reimburse the bureau for all past, present and future employees who are eligible for the DWRF." Id. at 269.

BWC's right to be reimbursed by self-insuring employers for DWRF benefits was also upheld in the case of Goodyear Tire & Rubber Co. v. Ohio Bureau of Workers' Compensation, 2000 WL 192364 (Ohio App. 10th Dist.), in which the Court found that a "self-insured employer's obligation for reimbursement arises at the time disbursements are made, rather than at the time the workers' right to receive them accrues under the other pertinent DWRF statutory sections." Id. at 5. In that case, self-insuring employers challenged invoices to reimburse for lump sum DWRF benefits paid to claimants * * * whose DWRF eligibility was not determined until substantial arrearages had accrued. The court determined that the obligation for a self-insuring employer to reimburse BWC for DWRF benefits arises at the time BWC pays the DWRF benefits, stating this is the "current responsibility" discussed in the Wean case, which refers to "all current DWRF outlays by the BWC regardless of the date of injury in relation to the date the employer became self-insured." Id. at 4. While the Panel notes that these cases do not directly address the scenario presented by Lutheran, it is clear from the discussion in these cases that the only act necessary to trigger the self-insuring employer's reimbursement obligation is the payment of DWRF benefits by BWC.

The Panel has considered the evidence submitted by the employer, and notes the following. Pursuant to questioning from the Panel, the self-insuring employer has no knowledge or evidence of whether it ever notified BWC that PTD benefits had been terminated. Additionally, the employer was informed on the invoices received from BWC that the billing was for Brown's claim, and never questioned the amounts due. Rather, it paid BWC without protest twice a year, for a period of some 17 years after PTD benefits were terminated.

The responsibilities of being a self-insuring employer include statutory compliance and proper administration of claims by

the employer. Lutheran, not BWC, was the party who had direct knowledge that Brown's PTD application had been denied. Therefore, Lutheran was in the best position to discover and correct what it now characterizes as "some inadvertent clerical error." The failure to make this correction should not be borne by BWC or state fund employers in general, who would absorb the loss if Lutheran is reimbursed. BWC has complied with the statutory requirements governing payment of DWRF benefits. Those requirements do not include reimbursement for such situations as the employer has presented. The employer's appeal is denied.

(Emphasis sic.)

{¶ 31} 19. Relator administratively appealed the SIRP decision to the administrator's designee.

{¶ 32} 20.  On December 7, 2011, the administrator's designee issued an order that affirms the SIRP decision.  The order explains:

Pursuant to Ohio Administrative Code Rule 4123-19-14, the Administrator's Designee hereby undertakes consideration of the employer's appeal of the Self-Insured Review Panel order from August 31, 2011. The issue presented is refund of assessments for the Disabled Workers' Relief Fund (DWRF).

The order of the Self-Insured Review Panel contains a detailed discussion of the proceedings, which the Administrator's Designee adopts in total. In particular, Lutheran Hospital knew when the application for permanent total benefits (PTD) of Elmira Brown had been denied and had, in fact, never paid any PTD benefits. Accordingly, Lutheran Hospital was in the position to know that seventeen years of billings for DWRF benefits paid to the injured worker in this self-insured claim were in error and should not have been reimbursed to BWC.

On appeal, the employer focuses on the May 8, 1992, Industrial Commission order denying PTD and on the alleged fault of BWC in not taking corrective action. However, this miss-characterizes the primary issue raised by the employer's protest. The protest is over rejection of the employer's 2011 request for a refund of payments. There is no dispute that there was fault on the part of the employer over a seventeen year period. Also, in many circumstances

> regarding alleged BWC errors, both employers and BWC are limited to a two-year look-back for corrections to employer accounts. Compare, Ohio Administrative Code Rules 4123-17-17(C), 4123-17-27, and 4123-17-28(B) & (C). Moreover, BWC will not bear any long-term negative monetary consequences in making a refund. The refund costs will be passed on to other employers contributing to the DWRF funds. To grant the employer's request in this instance would unjustly burden other Ohio employers.
>
> For these reasons, the Administrator's Designee upholds the order of the Self-Insured Review Panel. The employer's appeal is denied.

{¶ 33} 21. On August 1, 2013, relator, Lutheran Hospital, filed this mandamus action.

Conclusions of Law:

{¶ 34} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 35} R.C. 4123.411 through 4123.419 sets forth the statutory framework regarding the DWRF fund.

{¶ 36} R.C. 4123.411(C) sets forth a funding mechanism with respect to self-insured employers:

> For a self-insuring employer, the bureau of workers' compensation shall pay to employees who are participants regardless of the date of injury, any amounts due to the participants under section 4123.414 of the Revised Code and shall bill the self-insuring employer, semiannually, for all amounts paid to a participant.

{¶ 37} R.C. 4123.412 creates DWRF as a fund separate from the state insurance fund. Although the state treasurer has custody of the fund, disbursements from the fund are made by the bureau.

{¶ 38} R.C. 4123.413 defines participant eligibility:

> To be eligible to participate in said fund, a participant must be permanently and totally disabled and be receiving workers' compensation payments, the total of which, when combined with disability benefits received pursuant to The Social Security Act is less than three hundred forty-two

dollars per month adjusted annually as provided in division (B) of section 4123.62 of the Revised Code.

{¶ 39} R.C. 4123.414 establishes the amount of payments to eligible DWRF participants:

> Each person determined eligible, pursuant to section 4123.413 of the Revised Code, to participate in the disabled workers' relief fund is entitled to receive payments, without application, from the fund of a monthly amount equal to the lesser of the difference between three hundred forty-two dollars, adjusted annually pursuant to division (B) of section 4123.62 of the Revised Code, and:
>
> (1) The amount he is receiving per month as the disability monthly benefits award pursuant to The Social Security Act; or
>
> (2) The amount he is receiving monthly under the workers' compensation laws for permanent and total disability.

{¶ 40} R.C. 4123.416 provides in part:

> The administrator of workers' compensation shall promptly require of each employer who has elected to pay compensation direct under the provisions of section 4123.35 of the Revised Code a verified list of the names and addresses of all persons to whom the employer is paying workers' compensation on account of permanent and total disability and the evidence respecting such persons as the administrator reasonably deems necessary to determine the eligibility of any such person to participate in the disabled workers' relief fund.

{¶ 41} Supplementing the statute, Ohio Adm.Code 4123-17-29(B) provides:

> (1) Each self-insuring employer shall reimburse the bureau for DWRF payments made in claims in which it is the employer of record, without regard to the date the employer was granted the privilege to pay compensation directly, for all DWRF payments made on or after August 22, 1986.
>
> (2) Self-insuring employers shall be billed on a semi-annual basis for the DWRF payments made pursuant to this rule.

{¶ 42} In *Wean Inc. v. Indus. Comm.,* 52 Ohio St.3d 266 (1990), the Supreme Court of Ohio held that R.C. 4123.411(C), as amended August 22, 1986, does  not violate the retrospective provision of Article II, Section 28 of the Ohio Constitution.

{¶ 43} In *Wean,* the Supreme Court had occasion to summarize the statutory history of DWRF.  The court explains:

> The Disabled Workers' Relief Fund ("DWRF") was created in 1953 by the General Assembly to provide a subsidy to qualifying recipients of workers' compensation. To qualify, an employee, pursuant to R.C. 4123.412 through 4123.414, must be permanently and totally disabled as a result of occupational injury or disease and one whose workers' compensation benefits, when combined with Social Security Act disability payments, fall below a statutorily mandated amount.
>
> From 1953 to 1959, DWRF generated its funds from the state's general revenues. In 1959, the General Assembly, pursuant to R.C. 4123.411, altered the plan of financing the program and provided for an employer payroll assessment. R.C. 4123.411 provided, in its original form, that appellant Industrial Commission of Ohio ("commission") levy an assessment against all amenable employers in January of each year and that the rate was not to exceed three cents per hundred dollars of payroll. The commission's authority to maintain and administer the DWRF is derived from Section 35, Article II of the Ohio Constitution.
>
> Since 1959, R.C. 4123.411 has been amended on numerous occasions. For instance, in 1975, the statute was amended increasing the employer payroll assessment from a maximum of three cents to five cents per one hundred dollars of payroll. When assessments were found to be insufficient, investment income from the State Insurance Fund was provided, a funding procedure approved by this court in *Thompson v. Indus. Comm.* (1982), 1 Ohio St.3d 244, 1 OBR 265, 438 N.E.2d 1167.
>
> In 1980, the assessment was again increased to a minimum of five cents but not to exceed ten cents per one hundred dollars of payroll. This assessment was to be apportioned among four classes of employers: (1) private fund, (2) counties and taxing districts, (3) the state, and (4) self-insurers.

In 1986, the General Assembly decided once again to change the funding plan. Effective August 22, 1986, R.C. 4123.411(A) was amended to remove self-insured employers as one of the four classes established in 1980. In addition, R.C. 4123.411(C) provided that self-insured employers shall be liable for the full amount of DWRF payments to qualified employees "regardless of the date of injury." The DWRF payment is made by appellant Ohio Bureau of Workers' Compensation ("bureau") to the qualifying employee, after which the bureau collects the payment from the self-insured employers.

{¶ 44} In holding that R.C. 4123.411(C), as amended, does not violate the retrospective provision of the Ohio Constitution, the *Wean* court explained:

[I]t is clear to this court that the General Assembly has amended R.C. 4123.411 at all times with the specific intent that the statute apply prospectively. Clearly, the statute, by its terms, applies to self-insured employers who have a *current* responsibility to totally and permanently disabled employees, *regardless of the date of their injury.* Although the statute speaks to *prior employees* who *presently* qualify for DWRF payments, this does not mean R.C. 4123.411(C) automatically mandates a retrospective reading. We have held previously that " '[a] statute is not retroactive merely because it draws on antecedent facts for a criterion in its operation.' "

From the statute's inception, the purpose of R.C. 4123.411 has been to prescribe the *method* of funding the DWRF. To date, the purpose has remained unchanged. The only effect on Wean, as well as on all self-insured employers, is the *method* by which self-insured employers are assessed. Prior to August 22, 1986, Wean's contribution to the DWRF was based upon a percentage of its then *current* payroll. The General Assembly, pursuant to the 1986 amendment, directed Wean to reimburse the bureau dollar-for-dollar for those qualified employees entitled to DWRF payments regardless of the date the employee was injured. As was the case prior to August 22, 1986, the effect of the amendment speaks only to a self-insured employer's *current* responsibility.

(Emphasis sic.; Citations omitted.) *Id.* at 269.

{¶ 45} R.C. 4123.52 provides:

The jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified.

{¶ 46} In *State ex rel. Martin v. Connor*, 9 Ohio St.3d 213 (1984), noting "that the recoupability of payments made under a mistake of fact depends on the circumstances," the Supreme Court of Ohio issued a writ essentially ordering the administrator to cease the collection of alleged DWRF overpayments by reducing the monthly PTD award.

{¶ 47} In *Martin,* the issue arose when, in 1981, Martin's monthly Social Security Disability ("SSD") payments increased significantly and he obtained a lump sum payment from the Social Security Administration for "back pay." *Id.* at 213. The administrator viewed the lump sum warrant as past SSD payments which would have reduced or terminated past DWRF payments. Upon Martin's failure to respond to several offered repayment options, the administrator reduced his monthly PTD award.

{¶ 48} In *Martin,* the court determined "[n]o mistake was made with regard to [Martin's] right and respondent's duty *at the time the DWRF payments in question were made,*" and, on that basis, held that the administrator lacked authority to recover the alleged overpayments. (Emphasis sic.) *Id.* at 214.

{¶ 49} The *Martin* case is significant here for at least two reasons: (1) it clearly indicates that the administrator has R.C. 4123.52 continuing jurisdiction powers, and (2) it indicates the recoupability of payments made under a mistake of fact depends on the circumstances.

{¶ 50} In *State ex rel. Weimer v. Indus. Comm.*, 62 Ohio St.2d 159 (1980), a case the *Martin* court distinguished, a bureau claims examiner discovered, while reviewing the file of claimant Betty Weimer, that Weimer had been overpaid $3,476.58 because of a clerical error. The administrator issued an order notifying Weimer that the overpayment would be deducted from any future compensation. Weimer had a PTD award that would be reduced by the administrator's decision.

{¶ 51} Denying relief to Weimer, the court noted that "[a]t no point does [Weimer] dispute that due to clerical error she was overpaid compensation for her industrial claim." *Id.* at 159. The *Weimer* court further states:

> Although the question presented here is sui generis, the mistake in this case was indisputably a clerical error. This is clearly a mistake of fact.

*Id.* at 160.

{¶ 52} Here, it is clear that both the bureau and relator operated under a mutual mistake of fact during the bureau's payments of DWRF benefits to Brown and relator's reimbursements to the bureau under R.C. 4123.411(C). That is, both the bureau and relator mistakenly believed that Brown was receiving PTD compensation when in fact the initial PTD award had been vacated by the commission's order of May 8, 1992. It can indeed be said that for a period of some 17 years, both the bureau and relator operated under a clear mistake of fact based on an erroneous belief that Brown was receiving PTD compensation.

{¶ 53} Here, the December 7, 2011 order of the administrator's designee is based on a determination that relator was at "fault." Relator does not dispute that a determination of fault is an appropriate basis for the decision. In fact, relator spends much effort arguing that the bureau was primarily at fault and, thus, the refund should be ordered.

{¶ 54} The final two paragraphs of the SIRP order largely places fault on relator:

> The Panel has considered the evidence submitted by the employer, and notes the following. Pursuant to questioning from the Panel, the self-insuring employer has no knowledge or evidence of whether it ever notified BWC that PTD benefits had been terminated. Additionally, the employer was informed on the invoices received from BWC that the billing was for Brown's claim, and never questioned the amounts due. Rather, it paid BWC without protest twice a year, for a period of some 17 years after PTD benefits were terminated.
>
> The responsibilities of being a self-insuring employer include statutory compliance and proper administration of claims by the employer. Lutheran, not BWC, was the party who had direct knowledge that Brown's PTD application had been

denied. Therefore, Lutheran was in the best position to discover and correct what it now characterizes as "some inadvertent clerical error." The failure to make this correction should not be borne by BWC or state fund employers in general, who would absorb the loss if Lutheran is reimbursed. BWC has complied with the statutory requirements governing payment of DWRF benefits. Those requirements do not include reimbursement for such situations as the employer has presented. The employer's appeal is denied.

{¶ 55} In an effort to show that the bureau was primarily at fault, relator argues that the commission's order denying the PTD application "clearly put Respondents on notice that Brown was not eligible for DWRF benefits." (Relator's Brief, 8.) Apparently, this is relator's reference to the upper portion of the commission's order which contains the following:

BWC/LAW DIRECTOR
ACTUARIAL
DWRF

{¶ 56} Presumably, the above language indicates that a copy of the commission's order was to be sent to the bureau's DWRF section and perhaps to the bureau's law director.

{¶ 57} But even if we can presume that the bureau's DWRF section was sent a copy of the commission's order, that does not negate the obvious fact that relator was represented at the February 12, 1992 hearing and opposed the application. We must likewise presume that relator also received a copy of the commission's decision denying the PTD application. That is, relator, as a self-insured employer, was indeed an interested party to the commission proceedings.

{¶ 58} Relator does not deny that it was informed on the invoices received from the bureau that the billing was for Brown's claim. As SIRP concluded, relator never questioned the invoices and paid them twice a year for some 17 years. Certainly, relator bears responsibility for the neglect which supports a finding of fault.

{¶ 59} Relator's position here is largely premised on the assertion that the bureau had "no authority" to pay Brown DWRF payments given that the commission had denied

the PTD application. Given that the bureau lacked authority to make the payments, relator concludes it must be refunded the reimbursements it made for the unauthorized DWRF payments. Relator's argument simply ignores that the mistake of fact was mutual and that relator was in the best position over the years to correct the mistake.

{¶ 60} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).