[Cite as *State ex rel. Manor Care, Inc. v. Bur. of Workers' Comp.*, 2019-Ohio-2578.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Manor Care, Inc., | : | |
| Relator, | : | |
| | : | No. 17AP-864 |
| v. | : | (REGULAR CALENDAR) |
| Ohio Bureau of Workers' Compensation et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on June 27, 2019

**On brief:** *Kegler, Brown, Hill + Ritter Co., LPA, David M. McCarty, Randall W. Mikes,* and *Katja E. Garvey,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *Sherry M. Phillips,* for respondent Ohio Bureau of Workers' Compensation.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Manor Care, Inc., filed this original action requesting a writ of mandamus ordering respondent, Ohio Bureau of Workers' Compensation ("BWC"), to reimburse or credit relator for disabled workers' relief fund ("DWRF") payments made by relator.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends this court deny the request for a writ of mandamus.

{¶ 3}   Relator has filed the following two objections to the magistrate's decision:

I. THE MAGISTRATE'S FINDINGS OF FACT CONTAIN A GLARING OMISSION WHICH TAINTS SUBSEQUENT ANALYSIS.

II. MANOR CARE HAS A CLEAR LEGAL RIGHT TO THE REQUESTED RELIEF IN MANDAMUS.

{¶ 4}   As explained in the magistrate's decision, relator is a self-insured employer. Two of relator's former employees suffered injuries in the course of their employment and were ultimately awarded permanent total disability ("PTD") compensation. The orders granting PTD compensation in each case did not set the rate of compensation to be paid to each employee. Ultimately, because both former employees' PTD compensation rate was lower than the relevant statutory threshold amount, they received DWRF payments from BWC and relator reimbursed BWC for those DWRF payments. In 2014, BWC determined that both former employees had been overpaid DWRF benefits because they were underpaid PTD compensation. In 2015, BWC ordered relator to compensate the two former employees in the amount of the underpaid PTD compensation. Relator ultimately paid this compensation to both former employees under protest. Relator requested reimbursement or a credit from BWC for the amount of overpaid DWRF compensation. BWC's Self-Insured Review Panel ("SIRP") denied that request, holding that an underpayment of PTD compensation may not be offset against an overpayment of DWRF benefits paid and accepted in good faith. Relator filed an administrative appeal of the SIRP order and an administrator's designee for BWC issued a decision upholding the SIRP order. Relator then filed the present mandamus action.

{¶ 5}   The magistrate concluded the administrator's designee did not abuse her discretion in determining that relator should not receive reimbursement or a credit from BWC for the DWRF payments made to the former employees. The magistrate found that the SIRP and the administrator's designee did not abuse their discretion in placing some degree of fault on relator for the underpaid PTD compensation.

{¶ 6}   Relator argues in its first objection that the magistrate failed to refer to evidence in the record suggesting that the Industrial Commission of Ohio ("commission"), rather than relator, set the PTD compensation rate to be paid to the two former employees. Relator asserts this omission taints the magistrate's analysis of the decisions by SIRP and

the administrator's designee placing some of the fault for the underpayment of PTD compensation on relator. Relator further argues in its second objection that it has a clear legal right to the requested writ because it was not at fault for the underpayment of PTD compensation to the two former employees.

{¶ 7} We acknowledge the record contains a copy of BWC's Procedural Guide for Self-Insured Claims Administration, which indicates the commission calculates the PTD compensation rate in claims determined prior to April 19, 1999. Although this suggests relator may not have been responsible for setting the PTD compensation rate paid to each of the former employees, as noted in the decision of the administrator's designee, relator had access to the wage information used to set the PTD compensation rates.

{¶ 8} The Supreme Court of Ohio has held that BWC's ability to recoup excess DWRF payments from an injured worker when those payments were made under a mistake of fact depends on the circumstances. *State ex rel. Martin v. Connor*, 9 Ohio St.3d 213, 214 (1984). In *Martin*, the injured worker received PTD compensation and federal Social Security Disability Benefits. When his social security benefits were reduced, the worker became eligible for DWRF payments. After receiving DWRF payments for approximately five years, the worker's social security benefits were increased and he was given a lump sum payment that was determined to have been improperly withheld. BWC then sought to recover overpayment of DWRF benefits, asserting that if the lump sum social security benefits had been properly issued when he was entitled to them, he would have received less DWRF benefits. BWC ultimately discontinued the worker's DWRF benefits and reduced his PTD award to compensate for the alleged DWRF overpayment. *Id.* at 213. The worker filed a mandamus action and the Supreme Court granted the requested writ of mandamus, ordering BWC to continue full payment of PTD compensation and DWRF benefits. The court found that because all parties believed the worker was entitled to DWRF benefits at the time they were paid, BWC abused its discretion by trying to recover those payments. *Id.* at 214 ("While [BWC] has the authority to recoup overpayments, that authority is not unlimited. This court has reasoned that such authority does not extend to payments made and accepted in the good faith belief that they were due.").

{¶ 9} Similarly, this court held that an employer failed to demonstrate a clear legal right to reimbursement or a clear legal duty on BWC to pay reimbursement for DWRF

benefits that were improperly paid to an injured worker who was not eligible for those benefits. *State ex rel. Lutheran Hosp. v. Buehrer*, 10th Dist. No. 13AP-670, 2015-Ohio-380. In *Lutheran Hospital*, an injured worker applied for and was awarded PTD compensation. She was then notified that she would receive DWRF benefits. After a rehearing at the employer's request, the worker's application for PTD compensation was denied. Despite the ultimate denial of PTD compensation, the worker received DWRF benefits for nearly 20 years before BWC notified her the benefits would be terminated. Throughout the period when the worker received DWRF benefits, BWC billed the self-insured employer for those payments. *Id.* at ¶ 4. The employer then sought reimbursement from BWC for the DWRF payments made to the injured worker. *Id.* at ¶ 27. BWC denied the request for reimbursement and the employer sought a writ of mandamus from this court. *Id.* at ¶ 32-33. We adopted the magistrate's decision recommending that the writ be denied because both BWC and the employer operated under a mutual mistake of fact during the period when BWC was paying DWRF benefits to the injured worker and the employer was reimbursing BWC for those payments, and because the self-insured employer was in the best position to correct that mistake. *Id.* at ¶ 52, 59. In overruling the employer's objections to the magistrate's decision, this court found that the employer failed to present clear and convincing evidence that it had a right to reimbursement or that the BWC had a duty to pay reimbursement. *Id.* at ¶ 7.

{¶ 10} Assuming for purposes of analysis in the present case that the commission initially set the PTD compensation rates, it appears that, similar to *Lutheran Hospital*, both BWC and relator operated under a mutual mistake of fact during the relevant period because both believed the PTD compensation and DWRF benefit rates were properly set and calculated. As in *Lutheran Hospital*, relator was a self-insured employer and in the best position to correct that mistake. Thus, consistent with our prior decision in *Lutheran Hospital*, we find that relator has failed to demonstrate clear and convincing evidence that it has a right to reimbursement or that BWC has a duty to pay reimbursement.

{¶ 11} Accordingly, relator's objections to the magistrate's decisions lack merit and are overruled.

{¶ 12} Upon review of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we find the magistrate has properly

determined the pertinent facts and applied the appropriate law. We therefore overrule relator's two objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, the requested writ of mandamus is hereby denied.

*Objections overruled;*
*writ of mandamus denied.*

BROWN and LUPER SCHUSTER, JJ., concur.

———————————

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Manor Care, Inc., | : | |
| Relator, | : | |
| v. | : | No. 17AP-864 |
| Bureau of Workers' Compensation, et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on September 20, 2018

*Kegler, Brown, Hill + Ritter Co, LPA, David M. McCarty, Randall W. Mikes,* and *Katja E. Garvey,* for relator.

*Michael DeWine,* Attorney General, and *Patsy Thomas,* for respondent Bureau of Workers' Compensation.

### IN MANDAMUS

{¶ 13} In this original action, relator, Manor Care, Inc., requests a writ of mandamus ordering respondent Ohio Bureau of Workers' Compensation ("respondent" or "bureau") to vacate the April 6, 2016 decision of the administrator's designee that affirms the September 16, 2015 order of the bureau's Self-Insured Review Panel ("SIRP") that denied relator's request for reimbursement from the disabled workers' relief fund ("DWRF") for relator's payments to two injured workers for underpayments of permanent total disability ("PTD") compensation.

Findings of Fact:

{¶ 14} 1.   Following a February 17, 1994 hearing, two commission staff hearing officer's ("SHO") awarded PTD compensation to Mozell Kelly in her industrial claim in which relator is the self-insured employer.  The SHO's order does not set the rate of PTD compensation to be paid to Kelly by relator.

{¶ 15} 2.   Following a September 21, 1995 hearing, two SHOs awarded PTD compensation to Katalin Palotay in her three industrial claims in which relator is the self-insured employer.  The SHO's order does not set the rate of PTD compensation to be paid to Palotay by the self-insured employer.

{¶ 16} 3.   Because their PTD rates were lower than the statutory mandated minimum rate, Kelly and Palotay received DWRF benefits from the bureau.

{¶ 17} 4.   In 2014, the bureau conducted audits of Kelly and Palotay's industrial claims and particularly the payments of PTD compensation and DWRF benefits they had received.

{¶ 18} 5.  On September 25, 2014, the bureau mailed an order regarding Palotay's industrial claim.  The order found that Palotay had been overpaid $32,627.36 in DWRF benefits because of an underpayment of PTD compensation.  The order further explained: "DWRF overpayments are recouped by withholding the cost of living amounts from the date the overpayment is determined."

{¶ 19} 6.  On September 30, 2014, the bureau mailed an order regarding Kelly's industrial claim.  The order found that Kelly had been overpaid $46,535.58 in DWRF benefits because of an underpayment of PTD compensation.  The order further explained: "DWRF overpayments are recouped by withholding the cost of living amounts from the date the overpayment is determined."

{¶ 20} 7. On January 28, 2015, relator filed a motion in Kelly's claim, stating:

> Now comes the employer and hereby requests that the Industrial Commission exercise its continuing jurisdiction to determine what obligation, if any, Manor Care has to pay allegedly underpaid permanent total disability compensation benefits to the claimant. The BWC has not issued a formal order or formal audit findings demanding that Manor Care make such payment. Documentation, to be submitted, will establish that the claimant received all the compensation to which she was entitled and the Bureau already has been fully

reimbursed for all payment of DWRF benefits it has paid. The Commission should exercise its continuing jurisdiction to find that neither the BWC nor the claimant are entitled to any additional compensation/benefits.

A similar motion was filed in Palotay's claims.

{¶ 21} 8.  Following an April 30, 2015 hearing, an SHO issued an order in Kelly's industrial claim.  The SHO's order of April 30, 2015 rules on relator's January 28, 2015 motion, and states:

> The Staff Hearing Officer finds that the Bureau of Workers' Compensation order of 09/30/2014 was the result of a mistake of fact and law, in that 1) there is no evidence that demonstrates that the Self-Insuring Employer's prior payment of permanent total disability compensation was at a rate calculated by the Self-Insuring Employer herein and not at a rate determined and ordered by the Industrial Commission (see, the Bureau of Workers' Compensation's Procedural Guide for Self-Insured Claims Administration) and 2) a mistake of fact is evident in that the Bureau of Workers' Compensation order presumes that the Self-Insuring Employer herein independently elected to pay permanent total disability compensation at a rate now determined to be incorrect.
>
> The Staff Hearing Officer grants the Employer's C-86 Motion request for the exercise of continuing jurisdiction to the following extent. The Bureau of Workers' Compensation order of 09/30/2014 is vacated.
>
> The Staff Hearing Officer has no authority to order that the Bureau of Workers' Compensation reimburse the Self-Insuring Employer for the lump sum amount of permanent total disability compensation it has paid relative to the Bureau of Workers' Compensation's 09/30/2014 order.

A similar order was issued in Palotay's claims.

{¶ 22} 9.  On June 22, 2015, relator moved for commission reconsideration of the SHO's order of April 30, 2015.

{¶ 23} 10.  By letter dated June 26, 2015, relator withdrew its June 22, 2015 motion for reconsideration.

{¶ 24} 11.  On July 8, 2015, the three-member commission mailed an order dismissing, at relator's request, the motion for reconsideration.

{¶ 25} 12.  Earlier, by letter dated January 22, 2015, David Sievert, Supervisor, External Auditing of the bureau's self-insured department informed relator:

> This notice is in follow up to our conversation on January 15, 2015, during which we discussed the underpayment of Permanent Total Disability (PTD) benefits for several claims that were identified during a compliance audit by the Self-Insured Department. As was indicated at that time, it is the position of the Self-Insured Department that the full underpayment of PTD benefits related to claims 946901-22, L21469-22, 926966-22 (Katalin Palotay) must be paid by Friday January 23, 2015.
>
> Confirmation of these payments must also be provided to the BWC Self-Insured Department by January 30, 2013 [sic]. Failure to comply [with] this requirement could impact the privilege of Manor Care, Inc.'s self-insured status. If it is determined that the PTD underpayments have not been addressed, as requested, the Self-Insured Department will make a referral to the Self-Insured Review Panel for non-renewal of the self-insured policy and to the Self Insured Employer's Evaluation Board for further consideration of this matter.

{¶ 26} 13.  By letter dated January 23, 2015, relator appealed from the decision of the bureau's self-insured department.

{¶ 27} 14.  By letter dated January 28, 2015, Paul Flowers, director of the bureau's self-insured department, informed relator:

> I regret to inform you that the Ohio Bureau of Workers' Compensation (BWC) cannot renew your self-insurance policy, effective March 1, 2015, as the minimum criteria established in the self-insuring rules have not been met.
>
> The employer is in violation of Ohio Administrative Code 4123-19-03(K)(7), for failure to pay all compensation as required of a self-insuring employer by the workers' compensation laws. In September 2014, the BWC Self-Insured Department performed an audit on the Permanent Total Disability (PTD) claims of the employer as permitted by Ohio Administrative Code 4123-19-10(A)(1). The findings of the audit revealed that the employer had underpaid PTD benefits for several claims associated with injured workers Katalin Palotay (claims 946901-22, L21469-22, 926966-22) and Mozel Kelly (claim 952061-22). The finding of this

underpayment of PTD benefits was based on Ohio Revised Code 4123.58(B).

{¶ 28} 15.　By letter dated February 4, 2015, relator's counsel informed Director Flowers:

As you know, we represent the self-insured employer, Manor Care, in connection with its workers' compensation program. Manor Care hereby appeals your January 28, 2015 letter denying renewal of the company's self-insurance policy effective March 1, 2015. Manor Care denies that it is in violation of Ohio Administrative Code §4123-19-03(K)(7). Manor Care further denies that it has underpaid any benefits to which the referenced claimants (Katalin Palotay and Mozell Kelly) were entitled and/or that the Bureau was not properly and fully reimbursed for any payments so made. Please be advised that, under protest and with full reservation of rights, Manor Care has processed the disputed amounts for payment, and we expect that the checks will be mailed to the claimants by the end of this week. Proof of payment will be provided.

{¶ 29} 16.　By letter dated February 6, 2015, relator's counsel informed Kelly:

Our firm represents your former employer, Manor Care. Enclosed is 1 check totaling $47,058.40. This represents the amount the Bureau of Workers' Compensation (BWC) has directed Manor Care to pay you. BWC conducted an audit in September 2014 and determined that your Permanent Total Disability (PTD) rate should have been set higher. Manor Care is paying this amount under protest and believes you have received the correct total amount of weekly compensation at all times since you were declared permanently and totally disabled in 1995. Due to an apparent bookkeeping error, you previously received too little PTD compensation but, at the same time, you received too much Disabled Workers' Relief Fund (DWRF) compensation. The amount of underpaid PTD compensation exactly equals the amount of overpaid DWRF compensation. Despite the fact that the total amount due has been paid, the BWC has commanded Manor Care to send you this check.

{¶ 30} 17.　Also by letter dated February 6, 2015, relator's counsel informed Palotay:

Our firm represents your former employer, Manor Care. Enclosed are 3 checks totaling $36,872.74. This represents the amount the Bureau of Workers' Compensation (BWC) has directed Manor Care to pay you. BWC conducted an audit in

September 2014 and determined that your Permanent Total Disability (PTD) rate should have been set higher. Manor Care is paying this amount under protest and believes you have received the correct total amount of weekly compensation at all times since you were declared permanently and totally disabled in 1993. Due to an apparent bookkeeping error, you previously received too little PTD compensation but, at the same time, you received too much Disabled Workers' Relief Fund (DWRF) compensation. The amount of underpaid PTD compensation exactly equals the amount of overpaid DWRF compensation. Despite the fact that the total amount due has been paid, the BWC has commanded Manor Care to send you these checks.

{¶ 31} 18. Following a September 16, 2015 conference (or hearing) a three-member SIRP panel mailed an order on January 15, 2016, stating:

The issue presented concerned the employer's appeal of the denial of its request for reimbursement or a credit from BWC for amounts paid in claims for two injured workers. Specifically, the employer is requesting $78,897.34 for underpaid permanent total disability ("PTD") compensation in claims for Katolin [sic] Palotay (926966-22, 946901-22, L21469-22) and for Mozell Kelly (942061-22).

The statement of facts prepared by the Self-Insured Department states that in August of 2014, during a BWC audit of the employer's self-insured claim files, it was determined that PTD compensation was underpaid in the four claims referenced above from approximately 1992 to the time of the audit. The employer corrected the PTD rates going forward, but refused to pay underpaid PTD compensation, arguing that Disabled Workers' Relief Fund ("DWRF") benefits were overpaid over the same time period, and should be offset against the underpaid PTD. The Self-Insured Department required the self-insuring employer to pay underpaid PTD compensation directly to the injured workers. In the meantime, BWC issued DWRF overpayment orders in the four claims, as DWRF was paid based on incorrect PTD rates reported to BWC by the self-insuring employer. The DWRF overpayment orders were subsequently vacated by a staff hearing officer ("SHO") of the Industrial Commission ("IC"). The employer initially appealed the SHO orders, and then withdrew the appeals. The employer has requested reimbursement or a credit from BWC in the amount of the underpaid PTD compensation, which were both denied by the Self-Insured Department, resulting in this appeal.

At the conference, the employer's representatives acknowledged that the PTD compensation had been underpaid for years, but argued that the injured workers received DWRF benefits over this timeframe, and therefore received everything to which they were entitled. The representatives stated that the employer reimbursed BWC for all DWRF benefits paid in the claims, and that the overpaid DWRF benefits should be offset against the underpaid PTD compensation. The representatives further argued that the Self-Insured Department should not have required the employer to pay the underpaid PTD compensation directly to the injured workers. The employer regarded this as an accounting ledger issue, where perhaps the wrong amounts were paid for PTD and DWRF, in that too little PTD was paid, and too much DWRF was paid, but the injured workers suffered "no harm, no foul." The employer also expressed its willingness to pay self-insured assessments on the underpaid PTD compensation. The Panel was advised that since the Self-Insured Department required the employer to pay the underpaid PTD compensation, the injured workers are not overpaid, and BWC should either reimburse the employer for the underpaid PTD compensation, or make the employer whole by granting it a credit.

Ohio Revised Code Section 4123.46(B) requires self-insuring employers to provide, at a minimum, the same level of medical care, compensation, and benefits that would be provided to injured workers employed by a participant in the state insurance fund. Ohio Revised Code Section 4123.35(G) permits BWC to audit and monitor self-insured workers' compensation programs to ensure employers are in full compliance with all requirements. The statute is supplemented by Ohio Administrative Code Rules 4123-19-03(I), 4123-19-08(C), 4123-19-09(C)(2), and 4123-19-10, the latter of which permits audits to determine if a self-insuring employer is in full compliance with all requirements, including the proper payment of compensation or benefits.

The Disabled Workers' Relief Fund was established in 1953 to provide supplemental benefits to workers who have been granted PTD awards with low benefit rates. Ohio Revised Code Section 4123.411(C) provides the following:

For a self-insuring employer, the bureau of workers' compensation shall pay to employees who are participants regardless of the date of injury, any amounts due the participants under section 4123.414 [4123.41.4] of the Revised

Code and shall bill the self-insuring employer, semiannually, for all amounts paid to a participant.

The statute is supplemented by Ohio Administrative Code Rule 4123-17-29(B)(1), which provides the following:

Each self-insuring employer **shall reimburse the bureau for DWRF payments made in claims in which it is the employer of record**, without regard to the date the employer was granted the privilege to pay compensation directly, for all DWRF payments made on or after August 22, 1986. (Emphasis added.)

Prior to 1986, DWRF benefits were funded by employer payroll assessments charged to both state fund and self-insuring employers. In 1986, the General Assembly changed the DWRF funding mechanism for self-insuring employers, and BWC began billing each self-insuring employer of record for the full amount of DWRF payments made after August 22, 1986, without regard to the date of injury, in accordance with the provisions referenced above. The change in the funding mechanism was upheld by the Ohio Supreme Court in the case of Wean Inc. v. Industrial Commission of Ohio (1990), 52 Ohio St.3d 266. In that case, the Court stated that "self-insured employers are currently responsible to reimburse the bureau for all past, present and future employees who are eligible for the DWRF." Id. at 269.

BWC's right to be reimbursed by self-insuring employers for DWRF benefits was also upheld in the case of Goodyear Tire & Rubber Co. v. Ohio Bureau of Workers' Compensation, 2000 WL 192364 (Ohio App. 10th Dist.), in which the Court found that a "self-insured employer's obligation for reimbursement arises at the time disbursements are made, rather than at the time the workers' right to receive them accrues under the other pertinent DWRF statutory sections." Id. at 5. In that case, self-insuring employers challenged invoices to reimburse BWC for lump sum DWRF benefits paid to claimants whose DWRF eligibility was not determined until substantial arrearages had accrued. The court determined that the obligation for a self-insuring employer to reimburse BWC for DWRF benefits arises at the time BWC pays the DWRF benefits, stating this is the "current responsibility" discussed in the Wean case, which refers to "all current DWRF outlays by the BWC regardless of the date of injury in relation to the date the employer became self-insured." Id. at 4.

The Panel has now had an opportunity to review all of the information provided by the employer in support of this appeal, and notes the following. During a 2014 audit of the employer's self-insured workers' compensation program, the BWC auditor determined that the employer had paid PTD compensation to two injured workers at less than the statutory rate. Beginning in 1992, Ms. Palotay was paid $156.15 per week in PTD compensation when the correct rate was $188.34 per week. Beginning in 1993, Ms. Kelly was paid $132.81 per week in PTD compensation, when the correct rate was $175.12 per week. As part of the audit process, the employer was instructed to pay all underpaid PTD compensation to the injured workers, and to correct the PTD rate for future compensation. The underpaid PTD compensation will be included on the employer's 2015 Report of Paid Compensation, upon which self-insured assessments are calculated.

During these timeframes, BWC paid DWRF benefits in good faith, based on the incorrect PTD rates reported by the self-insuring employer, and these benefits were accepted in good faith by the injured workers. After the audit, BWC issued DWRF overpayment orders in these claims, which were subsequently vacated by the IC. As a result, the overpaid DWRF benefits may not be collected from future DWRF cost of living increases granted to the injured workers. The employer then requested reimbursement from BWC for the underpaid PTD compensation that it was required to pay to the injured workers following the audit.

As discussed above, DWRF provides supplemental benefits to injured workers with low PTD rates, and it is separate from the state insurance fund. This employer has been granted the privilege of operating a self-insured workers' compensation program, and is therefore required to provide the same level of PTD compensation that would be paid to an injured worker employed by a participant in the state insurance fund. These injured workers were also eligible for DWRF benefits. In accordance with the statutory scheme, BWC pays these supplemental DWRF benefits directly to eligible injured workers, and self-insuring employers are obligated to reimburse BWC for these amounts. When an audit determined that the wrong PTD compensation was paid, the self-insuring employer was required to pay the correct amount. This part of the risk placed on those granted the privilege of operating as a self-insuring employer, and the fact that these mistakes impacted the payment of DWRF benefits

does not change the relationship between the employer and BWC into one where BWC insures the employer against its own mistakes.

The Panel therefore finds that the Self-Insured Department was authorized to conduct its audit of these claims, and was further authorized to instruct the self-insuring employer to pay the underpaid PTD compensation, and to correct the PTD rate for future compensation. A self-insuring employer's obligation to pay PTD compensation to injured workers is completely separate from the obligation to reimburse BWC for DWRF benefits in a claim. An underpayment of PTD compensation owed to an injured worker may not be offset against an overpayment in DWRF benefits paid and accepted in good faith. Further, BWC is under no obligation to insure the self-insuring employer from the consequences of its own mistakes. The Panel finds that it was appropriate for the Self-Insured Department to deny the employer's request for reimbursement or a credit for underpaid PTD compensation, and the employer's appeal is denied.

(Emphasis sic.)

{¶ 32} 19.  Relator administratively appealed the September 16, 2015 SIRP order to the administrator's designee.

{¶ 33} 20.  Following a hearing, the administrator's designee issued a decision dated April 6, 2016 that upholds the September 16, 2015 SIRP order.  The April 6, 2016 decision of the administrator's designee states:

Pursuant to Ohio Administrative Code Rule 4123-19-14, the Administrator's Designee hereby undertakes consideration of the employer's appeal of the Self-Insured Review Panel order from January 15, 2016. The issue presented concerns the employer's request to be reimbursed or to be provided a credit against future Disabled Workers' Relief Fund ("DWRF") invoices in the amount of $78,897.34 for underpaid permanent total disability ("PTD") compensation.

The order of the Self-Insured Review Panel contains a detailed discussion of the proceedings, which the Administrator's Designee adopts with additional findings.

In August of 2014, the Self-Insured Department conducted an audit of the employer's self-insured claim files. During the audit, it was determined that PTD compensation was underpaid in claims for Katolin [sic] Palotay (926966-22,

946901-22, L21469-22) and for Mozell Kelly (952061-22), from 1992 to the time of the audit. While the employer corrected the PTD payment rate going forward, it refused to pay the underpaid PTD compensation. Instead, the employer argued that DWRF benefits were overpaid during the same time period, and those payments should be offset against the underpaid PTD. The Self-Insured Department required the employer to pay the underpaid PTD compensation directly to the injured workers, and the employer did make those payments.

At the same time, BWC issued DWRF overpayment orders in the four claims, given that the DWRF payments were based upon incorrect PTD rates reported to BWC by the self-insuring employer. These orders were overturned by a Staff Hearing Officer ("SHO") of the Industrial Commission ("IC"), by orders dated June 3, 2015. Although the employer initially appealed these orders, the appeals were later withdrawn. The employer then requested reimbursement or a credit in the amount of the underpaid PTD compensation, which was denied by the Self-Insured Department. This denial resulted in the appeal to the Self-Insured Review Panel, which also denied the request.

In its letter dated February 3, 2016, the employer sets forth three items for consideration. Initially, the employer comments that while the IC did not have jurisdiction to compel BWC to reimburse the employer, "certainly the Panel has such authority."  The Panel did not determine in its order that it had no authority to grant the requested relief. The order merely states that the denial of relief by the Self-Insured Department was appropriate.

Secondly, the employer states "the Order at least implies that Manor Care contest the notion that it must reimburse the Bureau dollar-for-dollar for DWRF payments and/or that it never made those reimbursements." While there is a lengthy discussion of the underpinnings of the DWRF statute and rule, including case law interpretation, this relates to the general obligation of all self-insuring employers to reimburse BWC for DWRF payments. There is no reference in the order, explicit or implicit, lending itself to the above interpretation set forth by the employer.

The crux of the appeal is that BWC made "numerous and repeated mistakes" that led to the employer being harmed, citing various BWC and IC policies. Initially, there is a general

reference to a BWC guide for self-insuring employers, which states that prior to April 1999, the Industrial Commission calculated the PTD rate. However, the actual IC orders granting PTD to these two injured workers do not contain any PTD rate calculations. There is no actual information in the evidence presented indicating how the PTD rates were set, or what entity set those rates.

What is known is that the employer would have had access to the wage information used to set the PTD compensation. Although the employer emphasizes that BWC did not audit the PTD compensation for a number of years, the Panel's order points out that the DWRF overpayments were "based on the incorrect PTD rates reported by the self-insuring employer." When the error was discovered, BWC issued overpayment orders in these claims so that it could avail itself of the opportunity to collect the overpayment from future increases in DWRF benefits. The IC denied the motions, but the SHO did reiterate in its findings that there was no evidence as to how the initial PTD rate was set, and that the employer paid PTD compensation at an incorrect rate. Additionally, the IC orders of June 3, 2015, also state that BWC sent annual letters to the employer documenting the DWRF rate calculation, the rate of payment, and notice of an opportunity to appeal if the employer disagreed with those findings. No appeal was ever taken by the employer.

The Panel's order sets out in great detail the responsibilities of a self-insuring employer with respect to payment of compensation and benefits, as well as the requirement to reimburse BWC for DWRF benefits paid. This is also reflected in the language of the SHO orders dated June 3, 2015, as follows:

"Payment of permanent total disability, in the case of a Self-Insured employer, originates with and issues from that Self-Insured employer. Disable workers' relief fund benefits, not considered to be 'compensation', are issued by the Bureau of Workers' Compensation at a rate dependent upon the permanent total disability compensation rate paid by the Self-Insuring employer."

DWRF is a separate fund created by statute for a specific purpose, to provide supplemental benefits to injured workers with low PTD rates of compensation. The employer's obligation to reimburse BWC for DWRF benefits is separate and distinct from its obligation to pay injured workers their

awarded compensation. DWRF cannot be used to "offset" an incorrect payment of PTD, which is the relief requested by the employer.

In considering this appeal, the Administrator's Designee has reviewed all of the material filed by the employer, whether or not they have been specifically referred to in this order.

For these reasons, the Administrator's Designee upholds the order of the Self-Insured Review Panel. The employer's appeal is denied.

{¶ 34} 21.  On December 7, 2017, relator, Manor Care, Inc., filed this mandamus action.

Conclusions of Law:

{¶ 35} The main issue is whether the administrator's designee abused her discretion in determining that relator shall not be reimbursed from the DWRF fund for its February 2015 payments to injured workers Kelly and Palotay for the PTD underpayments.

{¶ 36} Finding no abuse of discretion it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

### DWRF – Pertinent Statutes and Case Law

{¶ 37} R.C. 4123.411through 4123.419 sets forth the statutory framework regarding the DWRF fund.

{¶ 38} R.C. 4123.411(C) sets forth a funding mechanism with respect to self-insured employers:

For a self-insuring employer, the bureau of workers' compensation shall pay to employees who are participants regardless of the date of injury, any amounts due to the participants under section 4123.414of the Revised Code and shall bill the self-insuring employer, semiannually, for all amounts paid to a participant.

{¶ 39} R.C. 4123.412 creates DWRF as a fund separate from the state insurance fund.  Although the state treasurer has custody of the fund, disbursements from the fund are made by the bureau.

{¶ 40} R.C. 4123.413 defines participant eligibility:

To be eligible to participate in said fund, a participant must be permanently and totally disabled and be receiving workers'

compensation payments, the total of which, when combined with disability benefits received pursuant to The Social Security Act is less than three hundred forty-two dollars per month adjusted annually as provided in division (B) of section 4123.62of the Revised Code.

{¶ 41} R.C. 4123.414establishes the amount of payments to eligible DWRF participants:

Each person determined eligible, pursuant to section 4123.413of the Revised Code, to participate in the disabled workers' relief fund is entitled to receive payments, without application, from the fund of a monthly amount equal to the lesser of the difference between three hundred forty-two dollars, adjusted annually pursuant to division (B) of section 4123.62of the Revised Code, and:

(1) The amount he is receiving per month as the disability monthly benefits award pursuant to The Social Security Act; or

(2) The amount he is receiving monthly under the workers' compensation laws for permanent and total disability. * * * Such payments shall be made monthly during the period in which such participant is permanently and totally disabled.

{¶ 42} R.C. 4123.416provides in part:

The administrator of workers' compensation shall promptly require of each employer who has elected to pay compensation direct under the provisions of section 4123.35of the Revised Code a verified list of the names and addresses of all persons to whom the employer is paying workers' compensation on account of permanent and total disability and the evidence respecting such persons as the administrator reasonably deems necessary to determine the eligibility of any such person to participate in the disabled workers' relief fund.

{¶ 43} Supplementing the statute, Ohio Adm.Code 4123-17-29(B) provides:

(1) Each self-insuring employer shall reimburse the bureau for DWRF payments made in claims in which it is the employer of record, without regard to the date the employer was granted the privilege to pay compensation directly, for all DWRF payments made on or after August 22, 1986.

(2) Self-insuring employers shall be billed on a semi-annual basis for the DWRF payments made pursuant to this rule.

{¶ 44} In *Wean Inc. v. Indus. Comm.*, 52 Ohio St.3d 266 (1990), the Supreme Court of Ohio had occasion to summarize the statutory history of DWRF. The court states:

The Disabled Workers' Relief Fund ("DWRF") was created in 1953 by the General Assembly to provide a subsidy to qualifying recipients of workers' compensation. To qualify, an employee, pursuant to R.C. 4123.412through 4123.414, must be permanently and totally disabled as a result of occupational injury or disease and whose workers' compensation benefits, when combined with Social Security Act disability payments, fall below a statutorily mandated amount.

From 1953 to 1959, DWRF generated its funds from the state's general revenues. In 1959, the General Assembly, pursuant to R.C. 4123.411, altered the plan of financing the program and provided for an employer payroll assessment. R.C. 4123.411provided, in its original form, that appellant Industrial Commission of Ohio ("commission") levy an assessment against all amenable employers in January of each year and that the rate was not to exceed three cents per hundred dollars of payroll. The commission's authority to maintain and administer the DWRF is derived from Section 35, Article II of the Ohio Constitution.

Since 1959, R.C. 4123.411has been amended on numerous occasions. For instance, in 1975, the statute was amended increasing the employer payroll assessment from a maximum of three cents to five cents per one hundred dollars of payroll. When assessments were found to be insufficient, investment income from the State Insurance Fund was provided, a funding procedure approved by this court in Thompson v. Indus. Comm. (1982), 1 Ohio St. 3d 244, 1 OBR 265, 438 N.E. 2d 1167.

In 1980, the assessment was again increased to a minimum of five cents but not to exceed ten cents per one hundred dollars of payroll. This assessment was to be apportioned among four classes of employers: (1) private fund, (2) counties and taxing districts, (3) the state, and (4) self-insurers.

In 1986, the General Assembly decided once again to change the funding plan. Effective August 22, 1986, R.C. 4123.411(A)

was amended to remove self-insured employers as one of the four classes established in 1980. In addition, R.C. 4123.411(C) provided that self-insured employers shall be liable for the full amount of DWRF payments to qualified employees "regardless of the date of injury." The DWRF payment is made by appellant Ohio Bureau of Workers' Compensation ("bureau") to the qualifying employee, after which the bureau collects the payment from the self-insured employers.

*Id.* at 266.

## Relator's Argument

{¶ 45} It is undisputed that relator, as a self-insured employer, underpaid PTD compensation to injured workers Palotay and Kelly beginning with the inception of the PTD awards in 1994 and 1995 until the 2014 audit disclosed the underpayments. Upon being informed of the underpayments, relator corrected the PTD compensation going forward, but refused to correct the PTD compensation for the period prior to that.

{¶ 46} Relator argues that neither the bureau nor the injured workers suffered damage from the underpayments because the bureau's DWRF payments covered the underpayments and relator has reimbursed the bureau on receiving the bureau's DWRF bills. Relator also points out that relator's payments to the injured workers to correct the PTD underpayments has created a windfall in DWRF benefits to the injured workers.

## The Bureau's Argument

{¶ 47} The position of the administrator's designee and SIRP is that, as a self-insured employer, it is obligated by statute and rule to pay the correct amount of PTD compensation regardless that the underpayment correction causes a DWRF overpayment.

{¶ 48} In reaching this position, SIRP explained:

A self-insuring employer's obligation to pay PTD compensation to injured workers is completely separate from the obligation to reimburse BWC for DWRF benefits in a claim. An underpayment of PTD compensation owed to an injured worker may not be offset against an overpayment in DWRF benefits paid and accepted in good faith. Further, BWC is under no obligation to insure the self-insuring employer from the consequences of its own mistakes.

## Analysis

{¶ 49} Clearly, SIRP's position is premised, at least in part, on a finding that the underpayment of PTD compensation was the result of relator's "own mistakes." The administrator's designee concurs in the SIRP finding when she states "[w]hat is known is that the employer would have had access to the wage information used to set the PTD compensation." Thus, both SIRP and the administrator designee place some fault on relator in reaching their decisions to deny relator's appeal.

{¶ 50} Based on the evidence before SIRP and the administrator's designee, this magistrate cannot find an abuse of discretion with regard to the element of fault relied on by SIRP and the administrator's designee. *See State ex rel. Lutheran Hosp. v. Buehrer*, 10th Dist. No. 13AP-670, 2015-Ohio-380.

{¶ 51} "To be entitled to a writ of mandamus, a relator must carry the burden of establishing that he or she has a clear legal right to the relief sought, that the respondent has a clear legal duty to perform the requested act, and that the relator has no plain and adequate remedy in the ordinary course of law." *State ex rel. Van Gundy v. Indus. Comm.*, 111 Ohio St.3d 395, 2006-Ohio-5854, ¶ 13.

{¶ 52} "[T]he appropriate standard of proof in mandamus cases is proof by clear and convincing evidence." *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, ¶ 55, citing *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 161 (1967).

{¶ 53} Moreover, "[i]t is axiomatic that in mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government, and courts are not authorized to create the legal duty enforceable in mandamus." *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 18.

{¶ 54} Based on the above analysis, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

**Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).**